IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**LAKESHA BRYANT,**

    **Plaintiff,**

v.

**NEBRASKA FURNITURE MART,**

    **Defendant.**

Case No. 20-2216-DDC-JPO

## MEMORANDUM AND ORDER

Pro se[1] plaintiff Lakesha Bryant filed this action under Title VII of the Civil Rights Act of 1964 against defendant Nebraska Furniture Mart. Doc. 1. Defendant filed a Motion to Dismiss (Doc. 7) and a Memorandum in Support (Doc. 8). Plaintiff responded by filing a motion she called "Motion I Can't Breathe" (Doc. 11). Defendant filed a Reply (Doc. 12). The court has subject matter jurisdiction over this action.[2] For reasons explained below, the court grants defendant's Motion to Dismiss, but also grants plaintiff 21 days to file an Amended Complaint.

### I.     Whether Plaintiff Filed a Notice of Voluntary Dismissal

Plaintiff's "Motion I Can't Breathe" asserts that "it is to[o] painful to continue to fight this case" and that plaintiff does "not have the strength to fight this case." Doc. 11 at 1–2.

---

[1]     Because plaintiff proceeds pro se, the court construes her pleadings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers). But, under this standard, the court does not assume the role as plaintiff's advocate. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). The court does not construct arguments for plaintiff or search the record. *Id.*

[2]     "Federal courts exercise jurisdiction over Title VII actions pursuant to 28 U.S.C. § 1331's grant of general federal-question jurisdiction, and Title VII's own jurisdictional provision, 42 U.S.C. § 2000e-5(f)(3) (giving federal courts 'jurisdiction [over] actions brought under this subchapter')." *Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1850 (2019).

Defendant questioned whether plaintiff's motion seeks to initiate a voluntary dismissal. *See* Doc. 12 at 1. The court appreciates defendant's curiosity but notes that plaintiff's motion explicitly argues that this "case should not be dismissed without prejudice." Doc. 11 at 1. So, the court declines to construe plaintiff's "Motion I Can't Breathe" (Doc. 11) to signal her voluntary dismissal. The court thus proceeds to consider defendant's Motion to Dismiss and begins by reciting the facts that govern this motion.

## II.     Factual Background

The following facts come from plaintiff's Complaint (Doc. 1) and attached affidavit (Doc. 1-1). The court accepts them as true and views them in the light most favorable to plaintiff. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014).

Plaintiff describes herself as an "African American" and "Hebrew Israelite." Doc. 1 at 3 (Compl.); Doc. 1-1 at 1 (Pl. Aff. ¶ 1). She began seasonal employment with defendant on October 7, 2019. *Id.* Two days later, Michael Edwards—a white employee—assigned plaintiff to "an area called PT . . . ." *Id.* This area of defendant's store contained "apple smart watches, small Samsung tablets, gaming wear, etc." *Id.* Before plaintiff went to her assigned area, plaintiff was standing next to a white person when Mr. Edwards "[e]xpressed to [plaintiff] not to steal anything." Doc. 1 at 4 (Compl. ¶ 10); *see also* Doc. 1-1 at 1 (Pl. Aff. ¶ 1).

On November 8, 2019, Mr. Edwards commented to plaintiff, "I wonder if receiving could count all of the items before it reaches the mezzanine."[3] Doc. 1-1 at 1 (Pl. Aff. ¶ 2). The next day, Mr. Edwards assigned plaintiff to an area called "PV," which contained items such as vacuum cleaners and gaming software. *Id.* (Pl. Aff. ¶ 3). Plaintiff had never worked in this area before. *Id.* Plaintiff "immediately felt uncomfortable working there," so she called and sent text

---

[3]     Defendant explains that the "mezzanine" is the area of its "warehouse where employees sort and organize product before moving it to the sales floor." Doc. 8 at 2 n.3

messages to Narkevius "Smitty" Smith, a manager. *Id.*; *see also* Doc. 1-3 at 1 (showing screenshot of text message conversation with "Smitty (Boss)"). When Mr. Smith failed to respond, plaintiff "confronted" Mr. Edwards "and told him [that she] wanted to go home because he thinks [plaintiff] is a thief." *Id.* Eventually, Mr. Smith responded. *Id.* He and Mr. Edwards permitted plaintiff to go home. *Id.*

Plaintiff asked to be removed from the mezzanine, the area where she had been working. *Id.* Plaintiff asked for "mediation" because Mr. Edwards and Mr. Smith did not want plaintiff to leave the mezzanine because she was a good worker. *Id.* at 2 (Pl. Aff. ¶ 4). On November 15, 2019, plaintiff had a "closed mediation" with Mr. Edwards and Mr. Smith. *Id.* During the mediation, Mr. Edwards and Mr. Smith "reassured" plaintiff that she was in "a position to be hired on permanently." *Id.* Mr. Edwards also mentioned the Bible, said that *he* needed to go to church, and stated that plaintiff "may be Job[']s daughter from [plaintiff's] past life." *Id.* Plaintiff "felt that he was being funny." *Id.* After the meeting, Jason Blair, a supervisor, also "reassured" plaintiff about "a permanent position." *Id.*

After the mediation session, Mr. Blair, Mr. Edwards, and Mr. Smith "started acting differently toward [plaintiff]." *Id.* (Pl. Aff. ¶ 5). Plaintiff "experienced unjustified surveillance" in certain areas of the mezzanine, and Mr. Blair "would take items off [plaintiff's] cart and watch [her] look for them." *Id.* Mr. Blair also assigned plaintiff to "cardboard duty while everyone else stood around talking." *Id.* Mr. Blair also would "sing [plaintiff's] name at times." *Id.*

On December 10, 2019, plaintiff purchased a set of wireless headphones. *Id.* (Pl. Aff. ¶ 6). She noticed Mr. Smith and Mr. Edwards "glance at [her] while talking." *Id.* Mr. Edwards also asked her twice about her headphones. *Id.*

3

At some point defendant "secretly hired Jose A. Castro De Santiago (Mexican)" for the permanent position. *Id.* Plaintiff "confronted" Mr. Edwards and told him that she believed she didn't get the position because he thinks plaintiff is a thief. *Id.* On January 3, 2020, plaintiff contacted David Houston and Lisa Pigneri in defendant's Human Resources office. *Id.* (Pl. Aff. ¶ 7). Plaintiff explained to Mr. Houston and Ms. Pigneri that "all [she] wanted was [her] job." *Id.* A few days later, Mr. Houston contacted plaintiff and informed her that he could not "collaborate [her] story," and therefore did not "want to give [plaintiff] a position" with defendant "at all." *Id.*

### III. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court explained, "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume that the Complaint's factual allegations are true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). The Complaint's "[f]actual allegations must be enough to

4

raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

**IV.   Discussion**

Plaintiff filed an employment discrimination Complaint under Title VII, but does not assert separate counts or claims. *See* Doc. 1. Defendant construes the Complaint to assert five claims: (1) race discrimination based on defendant's failure to hire plaintiff for a permanent position, (2) national origin discrimination based on defendant's failure to hire plaintiff for a permanent position, (3) harassment/hostile work environment based on race, (4) harassment/hostile work environment based on national origin, and (5) retaliation. Doc. 8 at 1. Plaintiff's responsive filing, styled as a "Motion I Can't Breathe" (Doc. 11), does not challenge this interpretation of the Complaint. *See* Doc. 11. And defendant's interpretation appears to correspond to the Complaint's factual allegations and legal conclusions. The court thus

5

considers whether plaintiff's Complaint plausibly alleges race discrimination, national origin discrimination, or retaliation.

The court begins with plaintiff's failure-to-hire theory of discrimination.

### A. Plaintiff's Failure-to-Hire Claims

Plaintiff asserts that defendant violated Title VII by failing to hire her for a permanent position. "To establish a prima facie case of disparate treatment as a result of the prospective employer's failure to hire, a plaintiff must show that (1) [s]he applied for an available position; (2) [s]he was qualified for the position; and (3) [s]he was rejected under circumstances which give rise to an inference of unlawful discrimination." *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir. 1999) (citation and internal quotation marks omitted). Plaintiff asserts that defendant failed to hire her because of her race and national origin. The court now considers each of these failure-to-hire theories.

#### 1. Failure to Hire on the Basis of Race

Defendant asserts that even if the court accepts plaintiff's "well-pleaded facts as true, her race discrimination claim fails as to Elements 1 and 3" on a failure-to-hire claim because plaintiff "has not alleged that she applied for an available position with [d]efendant and because she has no well-pleaded facts (or even conclusory allegations) to support an inference of race discrimination." Doc. 8 at 5. The court agrees, and now explains why.

##### a. Whether Plaintiff Alleges She Applied for a Job with Defendant

Defendant asserts that plaintiff falls short of alleging "factual matter" suggesting that she actually applied for a position and was rejected. Doc. 8 at 5–6. So, defendant argues, plaintiff's "race-based failure to hire claim fails as a matter of law" because plaintiff alleges "merely that

6

Edwards, Smith, and Blair 'reassured' [p]laintiff a permanent position" with defendant. *Id.*; *see also* Doc. 1-1 at 2 (Pl. Aff. ¶ 4).

The Complaint fails to specify the job vacancy at issue, let alone allege whether plaintiff applied for the job. Plaintiff asserts that defendant's employees led her to believe that defendant would ultimately offer her a "permanent position," and then defendant "secretly hired" someone else. Doc. 1-1 at 2 (Pl. Aff. ¶ 6). The court liberally construes the pro se Complaint to assert that defendant hired someone else to fill the *same* permanent position that she expected to fill herself. She alleges few specifics about this job, its responsibilities, qualifications, or application process. Assuming that the Complaint adequately identifies a specific vacancy,[4] the court must determine whether plaintiff alleges that she "applied for an available position" within the meaning of *Anaeme*, 164 F.3d at 1278.

"If defendant has a formal procedure for applying for transfers and promotions, plaintiff cannot state a prima facie case unless he either complies with the procedure or demonstrates that compliance would be futile."[5] *Carney v. Pena*, 992 F. Supp. 1285, 1290 (D. Kan. 1998); *see also Marques v. Bank of Am.*, 59 F. Supp. 2d 1005, 1017–19 (N.D. Cal. 1999), *aff'd* 5 F. App'x 763 (9th Cir. 2001) (surveying "well established case law" from several Circuits). "Plaintiff

---

[4] "In the failure-to-promote and failure-to-hire context, every Circuit that has addressed this issue has required a plaintiff, as part of that plaintiff's prima facie case, to come forward with evidence of a specific vacant position for which the plaintiff was qualified and on which the plaintiff's claim is based." *Housley v. Boeing Co.*, 177 F. Supp. 2d 1209, 1222 (D. Kan. 2001), *aff'd*, 50 F. App'x 934 (10th Cir. 2002).

[5] The "futility exception requires a showing of a pervasive, consistent, and continuing pattern or practice of discrimination in order to justify excusing the plaintiff from the requirement of applying for the position." *Joyce v. Puritan-Bennett Corp.*, No. CIV. A. 90-2015-V, 1991 WL 278542, at *3 (D. Kan. 1991).

7

cannot defeat the formal application requirement by showing rare distinguishable exceptions to the procedure or policy." *Carney*, 992 F. Supp. at 1290.

Here, the Complaint reveals nothing of plaintiff *applying* for "the permanent position"—formally or informally. Based on the comments of some managers and coworkers, plaintiff expected to receive an offer for permanent employment. *See* Doc. 1-1 at 2 (Pl. Aff. ¶ 4). She asserts that "these men le[ ]d me into believing that I had a permanent position there . . . ." *Id.* (Pl. Aff. ¶ 6). Plaintiff alleges that Mr. Smith had mentioned to a coworker that he "was giving [plaintiff] a permanent position." *Id.* After plaintiff learned that defendant hired someone else for the permanent position, plaintiff confronted Mr. Edwards—a "lead"—to express her view why she "didn't get the position[.]" *Id.*

The lone allegation that could support a conclusion that plaintiff applied for a job alleges conduct occurring *after* defendant filled the permanent position. Specifically, after plaintiff learned that defendant hired someone else for the permanent position, plaintiff explained to two Human Resources employees "that all [plaintiff] wanted was [her] job." Doc. 1-1 at 2 (Pl. Aff. ¶ 7). Like much of plaintiff's pro se Complaint, this assertion suffers from both vagueness and ambiguity. It is unclear whether plaintiff's comment about "her job" referenced (1) her then-current seasonal job, or (2) the permanent job offer she had expected. But construing the facts in the light most favorable to plaintiff, the court assumes that she meant the latter. Even so, plaintiff expressed to human resources staff her interest in the permanent job only *after* defendant had filled the role with someone else. *See id.* (Pl. Aff. ¶¶ 6–7).

Ultimately, plaintiff's allegations fail to fulfill several elements of a prima facie failure-to-hire claim. She fails to assert that she complied with any process, formal or informal, required for consideration for the permanent job. *See Marques*, 59 F. Supp. 2d at 1017–18 (explaining

8

that if "the employer's established practice is to hire for certain positions without requiring formal applications, then obviously plaintiff need not have formally applied to state a claim, so long as she availed (or would have availed) herself of the employer's established process" (citations omitted)).  Nor does she allege that compliance with defendant's application procedure would prove futile.  Instead, plaintiff merely asserts that (1) her managers' comments to her and others led her to expect they would hire her as a permanent employee, (2) she desired that outcome, and (3) she was disappointed when it did not materialize.  Even if she had alleged that she signaled some interest in the role, "courts have also held that a general expression of interest is insufficient to trigger any duty to consider on the part of the employer." *Marques*, 59 F. Supp. 2d at 1018.  Plaintiff's alleged confrontation with Mr. Edwards suggests that plaintiff believed defendant was considering her for the position, but she alleges no action on her part to justify that subjective belief.

The facts alleged do not permit a reasonable finding or inference that plaintiff applied for the role she claims defendant discriminatorily failed to hire her to fill.  Since "plaintiff did not apply for the . . . position, [s]he cannot claim that [s]he was discriminated against when it was awarded to another person[.]" *Joyce v. Purita-Bennett Corp.*, No. CIV. A. 90-2015-V, 1991 WL 278542, at *3 (D. Kan. Dec. 19, 1991).  This defect justifies granting the Motion to Dismiss against the failure-to-hire claims, but the court notes below that these claims offer a second basis for dismissal.

### b. Whether Plaintiff Alleges Facts to Support an Inference of Race Discrimination

Defendant also argues that plaintiff fails to satisfy the third element of a prima facie failure-to-hire claim:  that plaintiff "was rejected under circumstances which give rise to an inference of unlawful discrimination." *Anaeme*, 164 F.3d at 1278 (citation and internal quotation

9

marks omitted). Defendant asserts that even if the court accepts plaintiff's "well-pleaded facts as true, her race discrimination claim fails" to satisfy this element "because she has no well-pleaded facts (or even conclusory allegations) to support an inference of race discrimination." Doc. 8 at 5. The court agrees.

The court's liberal construction of the pro se Complaint reveals only a handful of factual allegations that conceivably could relate to failure-to-hire race discrimination. These possibly relevant facts stem from comments and conduct by Michael Edwards, plaintiff's "lead" at work. Plaintiff appears to offer two theories why Mr. Edwards's comments and conduct permit an inference of unlawful discrimination.

*First*, plaintiff alleges that Mr. Edwards (1) advised plaintiff while she stood next to a white person on October 9, 2019—her second day of work—not to steal anything, (2) said to plaintiff, a month later, "I wonder if receiving could count all of the items before it reaches the mezzanine[,]" (3) glanced at plaintiff on December 10, 2019 while talking to plaintiff's manager, and (4) asked her twice about her headphones. Plaintiff concluded that Mr. Edwards believed she was a thief. Even though the court liberally construes the pro se Complaint, the court struggles to see where this conduct links to plaintiff's "Hebrew/African American" race. Plaintiff's "Motion I Can't Breathe" clarifies that "Michael Edwards was in the wrong for ster[e]otyping that 'all people of color are th[i]e[ ][ve]s.'" Doc. 11 at 1.

The court thus understands plaintiff to assert that (1) Mr. Edwards's conduct reflected his belief that plaintiff was a thief because she was a person of color, and (2) this race-based belief caused defendant to reject plaintiff for the permanent position. But the Complaint alone asserts no facts that can support this assertion. The Complaint makes no mention of Mr. Edwards's purported racial stereotyping of plaintiff as a thief and fails to assert facts capable of supporting a

10

reasonable inference that race influenced defendant's decision not to hire her for a permanent role. In contrast, the Complaint alleges that even after plaintiff "confronted" Mr. Edwards and told him that she wanted to go home because he thought plaintiff was a thief, Mr. Edwards viewed her as "a good worker[.]" Doc. 1-1 at 1–2 (Pl. Aff. ¶¶ 3–4). And plaintiff never asserts any facts linking Mr. Edwards to defendant's decision[6] not to hire plaintiff for a permanent role. She merely alleges that she "confronted Michael Edwards and told him that [she] believe[d] [she] didn't get the position because he thinks that [she is] a thief." Doc. 1-1 at 2 (Pl. Aff. ¶ 6). She never alleges facts about the role Mr. Edwards played in hiring processes.

*Second*, plaintiff alleges that "Edwards also stated that he needed to go to church," and "brought up the bible" during mediation stating that plaintiff "may be Job[']s daughter" from her past life. Doc. 1-1 at 2 (Pl. Aff. ¶ 4). This allegation cannot support a reasonable inference of racial discrimination. And the Complaint fails to assert facts that link this conversation to defendant's decision not to hire plaintiff.

Finally, defendant invokes the "same actor" inference to assert that the chronology of plaintiff's failure-to-hire theory undermines the allegations' ability to support an inference of discrimination. Defendant asserts that plaintiff fails to allege facts that permit an inference of race discrimination where the purported discriminatory non-promotion just barely trails defendant's initial decision to hire plaintiff just two months earlier. *See* Doc. 8 at 6 (quoting *Wayman v. A Z Auto. Corp.*, Case No. 04-2347-JWL, 2005 WL 3871600, at *5 (D. Kan. July 27, 2005) (Lungstrum, J.)). *Wayman* explained that "[s]everal courts of appeal have recognized that

---

[6] This analysis assumes there was a job, plaintiff applied for it, and defendant decided whether to hire plaintiff. As discussed above, the Complaint fails to assert facts that, if true, would enable the court to conclude that any of these things happened.

a presumption against discrimination arises" under such circumstances. *Wayman*, 2005 WL 3871600, at \*5.

The Tenth Circuit later embraced this "same actor inference" in *Antonio v. Sygma Network, Inc. See* 458 F.3d 1177, 1183 (10th Cir. 2006); *see also Ade v. Conklin Cars Salina, LLC*, 800 F. App'x 646, 651 (10th Cir. 2020) (applying *Antonio*'s "same actor" inference). *Antonio* reasoned that it "makes little sense to deduce that . . . individuals" who previously hired plaintiff "fully aware of her race and national origin" had "terminated [plaintiff] roughly ten months later because of her race and/or national origin." 458 F.3d at 1183. Our Circuit emphasized "that 'same actor' evidence gives rise to an inference, rather than a presumption, that no discriminatory animus motivated the employer's actions[.]" *Id.* (citations omitted). Both *Wayman* and *Antonio* considered motions for summary judgment. Defendant fails to explain whether the same actor inference applies to a court's analysis of a motion to dismiss. But, even if it does, the limits of plaintiff's Complaint render the inference unhelpful here because the Complaint fails to allege facts sufficient for the court to determine whether the actor(s) who decided to hire plaintiff was the *same actor(s)* who later decided not to promote her.[7] So the court does not apply the same actor inference here.

As the court evaluates defendant's Motion to Dismiss, the "question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC*, 555 F.3d at 1192 (citation omitted). The court

---

[7]     Plaintiff fails to allege who hired her in the first place, and the Complaint offers little clarity about who possessed authority to make the relevant hiring decisions. Plaintiff's allegations suggest that just about everyone working for defendant enjoyed hiring authority or at least the power to "reassure" plaintiff that she would receive a permanent job offer from defendant. *See* Doc. 1-1 at 2 (Pl. Aff. ¶ 4) (alleging that Mr. Edwards, Mr. Smith, and Mr. Blair all "reassured" plaintiff a permanent position); Doc. 1-1 at 2 (Pl. Aff. ¶ 6) (same); Doc. 1-1 at 3 (Pl. Aff. ¶ 7) (suggesting that "David Houston . . . in Human Resources" had authority to "give" plaintiff a position with defendant).

concludes that plaintiff's Complaint fails to assert allegations that, if true, render it plausible that she is entitled to relief under Title VII on a racial failure-to-hire theory. The court thus grants defendant's Motion to Dismiss against plaintiff's claims of discrimination on the basis of race.

### 2. Failure to Hire on the Basis of National Origin

Plaintiff also brings a parallel failure-to-hire claim based on plaintiff's national origin. To "establish a prima facie case of failure to hire based on . . . national origin" plaintiff "'must show that (1) he applied for an available position; (2) he was qualified for the position; and (3) he was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Laul v. Los Alamos Nat'l Labs.*, 765 F. App'x 434, 440 (10th Cir.), *cert. denied*, 140 S. Ct. 514 (2019) (quoting *Anaeme*, 164 F.3d at 1278).

The defects that deflate plaintiff's race-based failure-to-hire claim also doom her parallel claim based on national origin discrimination. Plaintiff never alleges that she applied for a specific position and that she was qualified for that role. And, as discussed above, even if plaintiff had alleged that she applied, she fails to allege facts that, if true, give rise to an inference of unlawful discrimination and "allow[ ] the court to draw the reasonable inference that the defendant is liable for the" wrongful failure-to-hire. *Iqbal*, 556 U.S. at 678.[8] The court thus also grants defendant's Motion to Dismiss plaintiff's failure-to-hire claim based on national origin discrimination.

---

[8] Defendant argues that plaintiff fails to assert properly a national origin. Defendant reasons that though plaintiff alleges that her national origin is "Hebrew," *see* Doc. 1 at 3 (Compl. ¶ 9), but neither Hebrew nor Hebrew Israelite is a national origin. Doc. 8 at 8. Instead, defendant asserts, Hebrew is a language and "Hebrew Israelite" is a religion. *Id.* And, defendant points out, plaintiff does not bring an action for discrimination on the basis of religion. *Id.* at 8 n.5. Even if liberally construed, the Complaint fails to allege a religious discrimination claim for the same reasons it fails to state a race discrimination claim. At bottom, plaintiff's Complaint fails to allege facts capable of supporting her conclusory assertions that defendant discriminated against her based on her status as Hebrew, "Hebrew/African American," or Hebrew Israelite.

### B. Harassment and Hostile Work Environment Claims

Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). The statute's reference to "terms, conditions, or privileges of employment" is not limited to economic or tangible discrimination—it also includes a prohibition against requiring employees to work in a discriminatorily hostile or abusive environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). An employer thus violates Title VII by maintaining a workplace "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* (quoting *Meritor*, 477 U.S. at 65, 67).

#### 1. Whether Plaintiff Alleges Harassment and Hostile Work Environment Because of Race or National Origin

Plaintiff here claims that she was subjected to a racially hostile work environment. Her claim relies on a few comments from her coworkers, none of which is explicitly racial in nature. General harassment is not actionable—the harassment must be based on race. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). A plaintiff must show "'more than a few isolated incidents of racial enmity'" or "sporadic racial slurs." *Id.* (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir.1987) (further quotation omitted)). Instead, a plaintiff must show "a steady barrage of opprobrious racial comments." *Id.* (citing *Hicks*, 833 F.2d at 1412–13 (further citations omitted)).

Here, the conduct plaintiff alleges falls far short of this standard. Plaintiff alleges that her supervisor—Jason Blair— (1) would take items off plaintiff's cart and watch her look for them,

14

(2) placed plaintiff "on cardboard duty" while everyone else stood around talking, and (3) would sing plaintiff's name at times. Doc. 1-1 at 2 (Pl. Aff. ¶ 5). As discussed above, plaintiff also alleges that her "lead"—Michael Edwards—(1) advised plaintiff on her second day of work to not steal anything, (2) a month later said "I wonder if receiving could count all of the items before it reaches the mezzanine[,]" and (3) glanced at plaintiff and asked her twice about her headphones. *Id.* at 1, 2 (Pl. Aff. ¶¶ 1–2, 6). Plaintiff concluded that Mr. Edwards believed she was a thief. Liberally construing plaintiff's pro se Complaint in her favor, none of the alleged conduct by Mr. Edwards or Mr. Blair links to plaintiff's race or national origin. Plaintiff's "Motion I Can't Breathe" begins to connect the dots by declaring that "Edwards was in the wrong for ster[e]otyping that 'all people of color are th[i]e[ ][ve]s.'" Doc. 11 at 1. The court understands plaintiff to assert that Mr. Edwards's conduct reflected his belief that plaintiff was a thief simply because she was a person of color. While the court can stitch together that possible theory of racial harassment by construing plaintiff's various pro se filings liberally, the Complaint alone falls short. Its allegations fail to support a plausible inference that this "harassment was racial or stemmed from racial animus." *Bolden*, 43 F.3d at 551.[9]

Therefore, the court must grant the Motion to Dismiss because plaintiff fails to meet one of the two requirements to support a hostile work environment claim. But, as shown below, plaintiff's hostile work environment claim fails for a second, independent reason—plaintiff fails to allege conduct sufficiently severe and pervasive to constitute a hostile work environment.

---

[9] And while the court can imagine that Mr. Edwards's comments about The Bible, his need to attend church, and the biblical prophet Job conceivably relates to plaintiff's "Hebrew Israelite" status and "Hebrew name" on her name-badge, the Complaint fails to allege that these comments are linked to race, national origin, or her harassment and hostile work environment claim. *See* Doc. 1-1 at 2 (Pl. Aff. ¶ 4).

15

### 2. Whether Plaintiff Alleges Severe and Pervasive Conduct

Even if the court could conclude that harassment was based on plaintiff's race or national origin, plaintiff also must show that the conduct was "'sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007)). The Tenth Circuit has explained that "'[p]ervasiveness and severity are independent and equal grounds' upon which a plaintiff may establish this element of a hostile environment claim." *Id.* (quoting *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998)). But, pervasiveness and severity "'are, to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once . . . , while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute.'" *Id.* (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)).

Determining whether the workplace is an objectively hostile work environment is not "a mathematically precise test." *Harris*, 510 U.S. at 22. The court must examine the totality of the circumstances, including admissible evidence about "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. But, when judging hostility, the court must ensure that it does not turn Title VII into a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[C]onduct that is merely offensive" does not violate Title VII. *Harris*, 510 U.S. at 21. For example, "'mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Id.* (quoting *Meritor*, 477 U.S. at 67). Instead, Title VII only prohibits conduct that is "severe or pervasive enough to

create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive . . . ." *Id.* "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Yang v. Lakewood Mgmt. L.L.C.*, 918 F. Supp. 2d 1205, 1208 (D. Kan. 2013) (citation and internal quotation marks omitted).

Here, plaintiff fails to allege conduct sufficiently severe or pervasive enough to constitute an actionable hostile work environment claim. As discussed already, plaintiff alleges no overtly racial comment or remark that might constitute severe or pervasive harassment. *See Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (concluding that plaintiff failed to demonstrate severe or pervasive harassment when his "list of grievances includes none of the racial comments or ridicule that are hallmarks of hostile work environment claims"); *Richardson v. Blue Cross/Blue Shield of Kan., Inc.*, 196 F. Supp. 2d 1174, 1185 (D. Kan. 2002) (granting summary judgment against plaintiff's hostile work environment claim where she alleged "no racially derogatory comments or even isolated racial acts, and thus ha[d] no independent factual foundation for th[e] claim").

Indeed, our Circuit has affirmed summary judgment in cases where plaintiffs were subjected to at least some racial slurs but no hostile work environment existed because the racial remarks were isolated or rare instances. *See, e.g.*, *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (affirming summary judgment against hostile work environment claim because two racially offensive remarks fall far short of the "steady barrage" required to support a claim); *Bolden*, 43 F.3d at 551–52 (concluding that two overly racial remarks did not amount to "a steady barrage of opprobrious racial comment, as required to show a racially hostile work environment" (citation and internal quotation marks omitted)). Here, plaintiff alleges even less.

17

The Complaint alleges a few incidents of singing, teasing, mention of a prophet, plaintiff's perception of suspicious glances, and a directive not to steal, but does not allege a single racial comment—and nothing that could demonstrate severe or pervasive harassment.

Conduct that may qualify as "boorish, juvenile, or annoying" does not necessarily amount to a hostile work environment. *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (citing *Faragher*, 524 U.S. at 778). And here, one can view plaintiff's coworkers' alleged behavior as rude or impolite, but the conduct alleged—even when viewed in plaintiff's favor— falls short of the severity required to state a claim for a hostile work environment.

The court now considers whether the Complaint alleges adequately a retaliation claim under Title VII.

### C. Retaliation

To state a retaliation claim, a plaintiff must allege: "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citations and footnote omitted). "Protected opposition can range from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) (citation omitted).

The court liberally construes plaintiff's Complaint to assert that defendant retaliated against her following her request for a mediation. Doc. 1-1 at 2 (Pl. Aff. ¶ 5) ("After mediation, I was retaliated against . . . ."). But plaintiff alleges that she requested mediation following defendant's reluctance to grant plaintiff's request for reassignment to another work area after "immediately fe[eling] uncomfortable working there[.]" *Id.* at 1 (Pl. Aff. ¶ 3). Plaintiff does not

18

allege that she requested mediation to oppose discrimination. *See id.* at 2 (Pl. Aff. ¶ 4) ("I asked for mediation because they did not want me to leave the mezzanine because I was a good worker[.]"). The alleged interaction between plaintiff and her coworkers do not satisfy plaintiff's burden to allege that she engaged in protected opposition to discrimination. The Complaint thus fails to allege that plaintiff engaged in protected opposition and her retaliation claim cannot survive a motion to dismiss.

V.     **Conclusion**

Plaintiff's Complaint alleges she endured some "weird" and unpleasant encounters with coworkers, and that she did not receive a job offer she expected to receive. She asserts that these events subject defendant to liability under Title VII. But to survive a motion to dismiss for failure to state a claim, a Complaint must allege sufficient *facts* to permit an inference that defendant is liable for the alleged violations. Here, plaintiff's Complaint fails to meet that requirement for various reasons. The court thus grants defendant's Motion to Dismiss.

But given plaintiff's pro se status, the court grants plaintiff 21 days from the date of this Order to file an Amended Complaint which sets forth a plausible claim for liability. *See Yang*, 918 F. Supp. 2d at 1209 (citing *Hall*, 935 F.2d at 1110 n.3 (noting that district courts should give pro se litigants reasonable opportunity to remedy defects in their pleadings)). If plaintiff fails to file timely an Amended Complaint, the court will order the Clerk to close the case.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 7) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** plaintiff is granted leave to file an Amended Complaint to cure the defects identified by this Order **within 21 days from the**

date of this Order. If plaintiff fails to file an Amended Complaint within 21 days, the court will dismiss this case in its entirety.

**IT IS SO ORDERED.**

Dated this 25th day of January, 2021, at Kansas City, Kansas.

<u>s/ Daniel D. Crabtree</u>
Daniel D. Crabtree
United States District Judge